RECEIPT # 65114
AMOUNT $
SUMMONS ISSUED
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK
DATE 4-9-04

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JONATHAN A. ZULAUF, On Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SONUS NETWORKS, INC., HASSAN AHMED, PH.D., and STEPHEN NILL, <br><br> Defendants. | CIVIL ACTION NO. <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> 04 - 10714 DPW <br><br> <u>**JURY TRIAL DEMANDED**</u> <br><br> MAGISTRATE JUDGE _Bowler_ |

Plaintiff, individually and on behalf of all other persons similarly situated, by his undersigned attorneys, alleges upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the public documents and announcements made by Defendants, Securities and Exchange Commission ("SEC") filings, and press releases regarding Sonus Networks, Inc. ("Sonus" or the "Company") as follows:

## NATURE OF THE ACTION

1.      This is a federal class action on behalf of purchasers of Sonus securities between June 3, 2003 and February 11, 2004, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated under Section 10(b) by the SEC [17 C.F.R. § 240.10b-5].

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

4.     Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b). Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District and Sonus conducts business in this District.

5.     In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

6.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased the common stock of Sonus at artificially inflated prices during the Class Period and has been damaged thereby.

7.     Defendant Sonus is a Delaware corporation and maintains its principal executive offices at 5 Carlisle Road, Westford, MA 01886. Sonus is a provider of voice infrastructure solutions for the new public network. The Company's products are a new generation of carrier-class switching equipment and software that enable voice services to be delivered over packet-based networks. By enabling voice traffic to be carried over these packet-based networks, the Company's products will accelerate the convergence of voice and data into the new public network.

8.     (a)     Defendant Hassan Ahmed, Ph.D. ("Ahmed") was, at all relevant times, President, Chief Executive Officer and Director of Sonus.

2

(b)    Defendant Stephen Nill ("Nill") was, at all relevant times, Chief Financial Officer of Sonus.

(c)    Defendants Ahmed and Nill are collectively referred to herein as the "Individual Defendants."

9.    During the Class Period, the Individual Defendants, as senior executive officers and directors of Sonus were privy to confidential and proprietary information concerning Sonus, its operations, finances, financial condition, and present and future business prospects. The Individual Defendants also had access to material, adverse, non-public information concerning Sonus as discussed in detail below. Because of their positions with Sonus, the Individual Defendants had access to non-public information about its business, finances, products, markets, and present and future business prospects via access to internal corporate documents, conversations, and communications with other corporate officers and employees, attendance at management and board of directors meetings and committees thereof, and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

10.    The Individual Defendants are liable as direct participants in, and as co-conspirators with respect to, the wrongs complained of herein. In addition, the Individual Defendants, by reason of their status as senior executive officers and a director were "controlling persons" within the meaning of Section 20 of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein. Because of their positions of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of Sonus's

business.

11.     The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases, and presentations to securities analysts, and through them, to the investing public. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading, prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

12.     As a senior executive officers and/or directors and as controlling persons of a publicly-traded company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and which was traded on the NASDAQ and governed by the federal securities laws, the Individual Defendants had a duty to disseminate promptly accurate and truthful information with respect to Sonus's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings, and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of Sonus's common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

13.     The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of Sonus's common stock by disseminating materially false and misleading statements and/or concealing material, adverse facts. The scheme: (I) deceived the investing public regarding Sonus's business, operations, and

4

management and the intrinsic value of Sonus common stock and (ii) caused Plaintiff and the other members of the Class to purchase Sonus's common stock at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

14.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all those who purchased the securities of Sonus during the Class Period and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company during the Class Period, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

15.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Sonus common shares were a publicly traded security. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Sonus or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

16.    Plaintiff's claims are typical of the claims of the Class, as all Class members are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

17.    Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel competent and experienced in class and securities litigation.

18.    Common questions of law and fact exist as to all members of the Class and

predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

   (a)  whether the federal securities laws were violated by Defendants' acts as alleged herein;

   (b)  whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and operations of Sonus; and

   (c)  to what extent the members of the Class have sustained damages and the proper measure of damages.

  19.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

  20.  Sonus describes itself as the leading provider of packet voice infrastructure solutions for wireline and wireless service providers. With its Open Services Architecture(TM) (OSA), Sonus delivers end-to-end solutions addressing a full range of carrier applications, including trunking, residential access and Centrex, tandem switching, and IP voice termination, as well as enhanced services.

  21.  Throughout the Class Period, Sonus issued numerous press releases touting their increasing quarterly revenues and filed quarterly reports with the Securities & Exchange Commission ("SEC") on Forms 10-Q which described the Company's internal revenue recognition policies.

22.    In truth and in fact, however, Sonus was improperly and untimely recognizing revenue from certain customer transactions in violation of Generally Accepted Accounting Principles ("GAMP") and its own stated policies on revenue recognition.

23.    On February 11, 2004, after the close of regular trading, Sonus shocked the market when it announced that the Company had identified certain issues, practices and actions of certain employees relating to both the timing of revenue recognized from certain customer transactions and to certain other financial statement accounts, which may affect the Company's 2003 financial statements and possibly financial statements for prior periods. The Company is reassessing the proper periods in which revenue should be recognized for these transactions. Prior to disclosing these adverse facts to the investing public, Sonus completed a $126.14 million public offering of 17 million shares, and Sonus insiders sold approximately $2 million of their personally-held shares to the unsuspecting public.

24.    The next morning, when the market opened for trading, shares of the Company's stock fell as low as $5.02 per share, a decline of $1.67 per share, or 24.9%, on extremely high trading volume.

### Pre-Class Period Statements

25.    On March 19, 2003, the Company filed its Form 10-K for the fourth quarter and year end 2002 with the SEC which confirmed its previously-announced financial results and was signed by Defendants Ahmed and Nill, among others. Concerning the Company's revenue recognition policy, the Company stated, in pertinent part, as follows:

> Revenue Recognition
>
> Sonus recognizes revenue from product sales to end users, resellers and distributors upon shipment, provided there are no uncertainties

7

regarding acceptance, persuasive evidence of an arrangement exists, the sales price is fixed or determinable and collection of the related receivable is probable. If uncertainties exist, Sonus recognizes revenue when those uncertainties are resolved. In multiple element arrangements, in accordance with Statement of Position 97-2 and 98-9, Sonus uses the residual method when vendor-specific objective evidence does not exist for one of the delivered elements in the arrangement. Service revenue is recognized as the services are provided. Revenue from maintenance and support arrangements is recognized ratably over the term of the contract. Amounts collected prior to satisfying the revenue recognition criteria are reflected as deferred revenue. Warranty costs are estimated and recorded by Sonus at the time of product revenue recognition.

26.     On April 9, 2003, the Company issued a press release announcing its financial results for the first quarter of 2003, the period ended March 31, 2003. Sonus reported revenues of $16.0 million and a net loss of $4.4 million or $0.02 per share. Defendant Ahmed commented positively on the results, stating, in pertinent part, as follows:

> Our financial results for the first quarter reflected good progress toward our business objectives. We grew our revenues 27 percent over last quarter, and by continuing to manage our business with precision, we further narrowed our net loss. In Q1, we also continued to add new customers around the globe and made important additions to our product family. [Emphasis added.]

27.     On April 22, 2003, the Company announced that it had completed a public offering of 20 million shares of common stock at a per share price of $3.05, raising $61 million.

28.     On May 9, 2003, the Company filed its Form 10-Q for the first quarter of 2003 with the SEC which confirmed the previously-announced financial results and was signed by Defendant Nill. Concerning the Company's revenue recognition policies, the 10-Q stated, in pertinent part, as follows:

> Revenue Recognition. We recognize revenue from product sales to end users, resellers and distributors upon shipment, provided there are no uncertainties regarding acceptance, persuasive evidence of an

8

arrangement exists, the sales price is fixed or determinable and collection of the related receivable is probable. If uncertainties exist, we recognize revenue when those uncertainties are resolved. In multiple element arrangements, in accordance with Statement of Position 97-2 and 98-9, we use the residual method when vendor-specific objective evidence does not exist for one of the delivered elements in the arrangement. Service revenue is recognized as the services are provided. Revenue from maintenance and support arrangements is recognized ratably over the term of the contract. Amounts collected prior to satisfying the revenue recognition criteria are reflected as deferred revenue.

29.    The statements referenced above in ¶¶ 25-28 remained alive and uncorrected throughout the Class Period.

### Materially False And Misleading
### Statements Issued During The Class Period

30.    The Class Period begins on June 3, 2003, the first day that Sonus common stock traded above $5.02 per share.

31.    On July 10, 2003, the Company issued a press release announcing its financial results for the second quarter of 2003, the period ended June 30, 2003. Sonus reported revenues of $21.4 million and a net loss of $3.2 million or $0.01 per share. Defendant Ahmed commented positively on the results, stating, in pertinent part, as follows:

> We are pleased with the progress that we made in the second quarter, particularly with our 33% sequential revenue growth. We executed across all areas of the business - broadening and strengthening our customer base, expanding our leading product offering, bolstering our balance sheet and advancing our drive to profitability. [Emphasis added.]

Defendant Ahmed continued, stating, in pertinent part, as follows:

> Our revenue growth, coupled with premier customer wins like Verizon Communications underscores our belief that the packet voice market is entering a new phase. Incumbent carriers are now adopting packet voice solutions and Sonus Networks is proud to be at the

9

forefront of this transition.  [Emphasis added.]

32.    On August 14, 2003, the Company filed its Form 10-Q for the second quarter of 2003

with the SEC which confirmed the previously-announced financial results and was signed by

Defendant Nill.  Concerning the Company's revenue recognition policies, the 10-Q provided, in

pertinent part, as follows:

> Revenue Recognition.  We recognize revenues from product sales to
> end users, resellers and distributors upon shipment, provided there are
> no uncertainties regarding acceptance, persuasive evidence of an
> arrangement exists, the sales price is fixed or determinable and
> collection of the related receivable is probable.  If uncertainties exist,
> we recognize revenues when those uncertainties are resolved.  In
> multiple element arrangements, in accordance with Statement of
> Position 97-2 and 98-9, we use the residual method when
> vendor-specific objective evidence does not exist for one of the
> delivered elements in the arrangement.  Service revenue is recognized
> as the services are provided.  Revenues from maintenance and
> support arrangements are recognized ratably over the term of the
> contract.    Amounts collected prior to satisfying the revenue
> recognition criteria are reflected as deferred revenue.

33.    September 23, 2003, the Company issued a press release announcing that it had

completed a public offering of 17 million shares of common stock at a per share price of $7.75 less

applicable underwriter discounts.

34.    On October 8, 2003, the Company issued a press release announcing its financial

results for the third quarter of 2003, the period ended September 30, 2003.  Sonus reported revenues

of $28.6 million and net income of $1.2 million, or $0.01 per diluted share - its first quarterly profit

ever.  Defendant Ahmed commented on the results, stating, in pertinent part, as follows:

> This was a strong quarter for Sonus Networks, our fourth consecutive
> quarter of revenue growth.  Our revenues grew 34% sequentially to
> $28.6 million, reflecting increased market demand for packet
> telephony and the expanding number of customers who have adopted
> Sonus' solutions.  We achieved an important milestone in reporting

> our first quarterly profit on a GAAP basis. Additionally, we bolstered our balance sheet to capitalize on the opportunity ahead, adding $126 million to our cash and marketable securities through a common stock offering in September. [Emphasis added.]

35.    On November 10, 2003, the Company filed its Form 10-Q for the third quarter of 2003 with the SEC which confirmed the previously-announced financial results and was signed by Defendant Nill. Concerning the Company's revenue recognition policies, the 10-Q provided, in pertinent part, as follows:

> Revenue Recognition. We recognize revenues from product sales to end users, resellers and distributors upon shipment, provided there are no uncertainties regarding acceptance, persuasive evidence of an arrangement exists, the sales price is fixed or determinable and collection of the related receivable is probable. If uncertainties exist, we recognize revenues when those uncertainties are resolved. In multiple element arrangements, in accordance with Statement of Position 97-2 and 98-9, we use the residual method when vendor-specific objective evidence does not exist for one of the delivered elements in the management. Service revenues are recognized as the services are provided. Revenues from maintenance and support arrangements are recognized ratably over the term of the contract. Amounts collected prior to satisfying the revenue recognition criteria are reflected as deferred revenues.

36.    The statements referenced above in ¶¶ 31-32 and 34-35 were each materially false and misleading when made as they failed to disclose and/or misrepresented the following material adverse facts which were then known to Defendants or recklessly disregarded by them:

(a)    that Defendants had improperly and untimely recognized revenue on certain of the Company's customer transactions;

(b)    that Defendants violated GAAP and the Company's own internal policies regarding the timing of revenue recognition; and

(c)    as a result of the foregoing, the Company's revenues, net income and

11

earnings per share published during the Class Period were materially false and misleading.

## The Truth Begins to Emerge

37.     On January 20, 2004, the Company announced that it would postpone the release of its fourth quarter and full year 2003 financial results pending the completion of its 2003 audit. Upon completion of the audit, the Company will reschedule the conference call and provide further details.

38.     Then, on February 11, 2004, more than 20 days after postponing its fourth quarter and full year results, after the close of regular trading, the Company shocked the market when it issued a press release announcing that it had identified certain issues, practices and actions of certain employees relating to both the timing of revenue recognized from certain customer transactions and to certain other financial statement accounts, which may affect the Company's 2003 financial statements and possibly financial statements for prior periods. The Company is reassessing the proper periods in which revenue should be recognized for these transactions. Defendant Ahmed commented on the shocking revelation, stating, in pertinent part, as follows:

> We are deeply concerned and disappointed to have discovered that certain employees at Sonus Networks were engaged in behavior that violated our code of conduct and may have compromised the integrity of our financial reporting.

39.     The next morning, when the market opened for trading, shares of the Company's stock fell as low as $5.02 per share, a decline of $1.67 per share, or 24.9%, on extremely high trading volume.

40.     The market for Sonus's common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Sonus's common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Sonus common stock

12

relying upon the integrity of the market price of Sonus's common stock and market information relating to Sonus, and have been damaged thereby.

41.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Sonus's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, asset forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

42.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about Sonus's business, prospects and operations.  These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Sonus and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

## ADDITIONAL SCIENTER ALLEGATIONS

43.    As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were

13

materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Sonus, their control over, and/or receipt and or modification of Sonus's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Sonus, participated in the fraudulent scheme alleged herein.

44.    Defendants were further motivated to engage in this course of conduct in order to generate proceeds from a public offering of 17 million shares of Common Stock at a per share price of $7.75 whereby the Company reaped approximately $126.14 million in proceeds.

45.    Lastly, prior to the disclosure of the adverse facts alleged herein, Sonus insiders engaged in a substantial insider-selling campaign - selling over 250,000 shares of their personally-held Sonus shares for gross proceeds of approximately $2 million, as illustrated in the following chart:

| Insider | Date of Sale | Amount of Shares | Price Per Share | Proceeds |
|---|---|---|---|---|
| Edward T. Anderson, Director | 7/18/03 | 32,378 | $6.85 | $221,789.30 |
| | 7/18/03 | 33,206 | $6.84 | $227,129.04 |
| **Total** | | **65,584** | | **$448,918.34** |
| | | | | |
| Edward Harris, Vice President | 7/18/03 | 30,000 | $6.81 | $204,300.00 |
| | | | | |
| John Francis, O'Hara, Vice President | 7/22/03 | 15,000 | $6.95 | $104,250.00 |
| | 7/22/03 | 15,000 | $7.03 | $105,450.00 |

| | | | | |
|---|---|---|---|---|
| | 7/22/03 | 15,000 | $6.82 | $102,300.00 |
| | 7/22/03 | 10,000 | $6.92 | $69,200.00 |
| | 10/22/03 | 5,000 | $7.90 | $39,500.00 |
| | 10/22/03 | 5,000 | $7.85 | $39,250.00 |
| | 10/22/03 | 3,750 | $7.91 | $29,662.50 |
| **Total** | | **68,750** | | **$489,612.50** |
| | | | | |
| Paul R. Jones, Vice President | 10/10/03 | 100,000 | $8.57 | $857,000.00 |
| **Grand Total** | | **264,334** | **$7.57** | **$1,999,830.84** |

## Applicability Of Presumption Of Reliance:
## Fraud-On-The-Market Doctrine

46.     At all relevant times, the market for Sonus's common stock was an efficient market
for the following reasons, among others:

(a)     Sonus's stock met the requirements for listing, and was listed and actively
traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Sonus filed periodic public reports with the SEC and
the NASDAQ;

(c)     Sonus regularly communicated with public investors via established
market communication mechanisms, including through regular disseminations of press releases
on the national circuits of major newswire services and through other wide-ranging public
disclosures, such as communications with the financial press and other similar reporting services;
and

(d)     Sonus was followed by several securities analysts employed by major
brokerage firms who wrote reports which were distributed to the sales force and certain
customers of their respective brokerage firms. Each of these reports was publicly available and
entered the public marketplace.

15

47.     As a result of the foregoing, the market for Sonus's common stock promptly digested current information regarding Sonus from all publicly-available sources and reflected such information in Sonus's stock price. Under these circumstances, all purchasers of Sonus's common stock during the Class Period suffered similar injury through their purchase of Sonus's common stock at artificially inflated prices and a presumption of reliance applies.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

48.     The market for Sonus's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Sonus's common stock traded at artificially inflated prices during the Class Period. Plaintiff and the other members of the Class purchased or otherwise acquired Sonus securities relying upon the integrity of the market price of Sonus's securities and market information relating to Sonus, and have been damaged thereby.

49.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Sonus's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material, adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

50.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and the other members of the Class. As described herein, during the Class Period Defendants made or caused to be made a series of materially false or misleading

statements about Sonus's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Sonus and its business, prospects and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and the other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## NO SAFE HARBOR

51.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Sonus who knew that statement was false when made.

17

**COUNT I**
**Violation Of Section 10(b) Of**
**The Exchange Act And Rule 10b-5**
**Promulgated Thereunder Against All Defendants**

52.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

53.     Throughout the Class Period, Sonus and the Individual Defendants, carried out a plan, scheme, and course of conduct that was intended to and did: (I) deceive the investing public, including Plaintiff and the other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Sonus's securities; and (iii) cause Plaintiff and the other members of the Class to purchase Sonus's securities at artificially inflated prices. In furtherance of this unlawful scheme and course of conduct, Defendants took the actions set forth herein.

54.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Sonus's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

55.     In addition to the duties of full disclosure imposed on Defendants as a result of their making of affirmative statements and reports, or participation in the making of affirmative statements and reports to the investing public, Defendants had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC as embodied in SEC Regulation S-X (17 C.F.R. §§ 210.01 *et seq.*) and

18

Regulation S-K (17 C.F.R. §§ 229.10 *et seq.*) and other SEC regulations, including accurate and truthful information with respect to the Company's operations, financial condition, and earnings so that the market price of the Company's securities would be based on truthful, complete, and accurate information.

56.     Sonus and the Individual Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal material, adverse information about the business, operations, and future prospects of Sonus as specified herein.

57.     Defendants employed devices, schemes and artifices to defraud, while in possession of material, adverse, non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Sonus's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Sonus and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Sonus's securities during the Class Period.

58.     The Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (I) the Individual Defendants were high-level officers and/or directors at the Company during the Class Period; (ii) the Individual Defendants were privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; and (iii) the Individual Defendants were aware of the Company's dissemination of

information to the investing public that they knew or recklessly disregarded was materially false and misleading.

59.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Sonus's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

60.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Sonus's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Sonus's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material, adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Sonus securities during the Class Period at artificially high prices and were damaged thereby.

61.     At the time of said misrepresentations and omissions, Plaintiff and the other members

of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known of the true financial condition and business prospects of Sonus, which were not disclosed by Defendants, Plaintiff and the other members of the Class would not have purchased or otherwise acquired their Sonus securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

62.    By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

63.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

### COUNT II
### Violation Of Section 20(a) Of
### The Exchange Act Against the Individual Defendants

64.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

65.    The Individual Defendants acted as controlling persons of Sonus within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false

21

and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

66.     In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

67.     As set forth above, Sonus and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions each as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Sonus and the Individual Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all Defendants for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses

22

incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: April ___, 2004

By his attorneys,

Theodore M. Hess-Mahan BBO #557109
Shapiro Haber & Urmy LLP
75 State Street
Boston, MA 02109
(617) 439-3939

Mel E. Lifshitz
**BERNSTEIN LIEBHARD & LIFSHITZ, LLP**
10 East 40th Street
New York, NY  10016
Tel: (212) 779-1414

**Attorneys for Plaintiff**

23

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, _Jonathan Zulauf_ ("Plaintiff"), declare the following as to the claims asserted under the federal securities laws:

1.    Plaintiff has reviewed the complaint filed in this matter and has authorized the filing of a complaint based on similar allegations in a related or amended complaint. Plaintiff retains Bernstein Liebhard & Lifshitz, LLP and such co-counsel it deems appropriate to associate with to pursue such action on a contingent fee basis.

2.    Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in this private action.

3.    Plaintiff is willing to serve as a lead plaintiff either individually or as part of a group. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial. I understand that the litigation is not settled, this is not a claim form, and sharing in any recovery is not dependent upon execution of this Certification.

4.    Plaintiff's transaction(s) in the SONUS NETWORKS, INC. security that is the subject of this action during the period of 6/3/03 through and including 2/11/04 are as follows:

| No. of Shares | Stock Symbol | Buy/Sell | Date | Price Per Share |
|---|---|---|---|---|
| 1000 | SONS | | 1/20/04 | 9.81 |
| | | | | |
| | | | | |

Please list other transactions on a separate sheet of paper, if necessary.

5.    During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for the class in any action filed under the federal securities laws except as indicated here:

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, or as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _27th_ day of _March_, 2004.

Signature

_Jonathan A. Zulauf_
Print Name